923 F.2d 423
 136 L.R.R.M. (BNA) 2233, 7 Indiv.Empl.Rts.Cas. 216
 Bruce MONKS and Michael Smigulec, Plaintiffs,
Frederick Balkwill; Margo Balkwill; and the Estate of Leo
Russ, by Serena Russ, Personal Representative,
Plaintiffs-Appellants,
v.
Carl MARLINGA, in his capacity as Prosecuting Attorney for
Macomb County; and the Macomb County Board of
Commissioners, Defendants-Appellees.
 No. 90-1323.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 3, 1990.
Decided Jan. 8, 1991.
Rehearing Denied Feb. 6, 1991.
 
 Glen N. Lenhoff, David A. Wecker (argued), Flint, Mich., for plaintiffs-appellants.
 Jeffrey G. Heuer, Melanie T. LaFave (argued), Jennifer Anderson, Jaffe, Snider, Raitt & Heuer, Detroit, Mich., George E. Brumbaugh, Jr., County of Macomb, Asst. Corp. Counsel, Mt. Clemens, Mich., for defendants-appellees.
 Before MARTIN and NELSON, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellants Frederick Balkwill, Margo Balkwill, and the Estate of Leo Russ appeal four rulings of the district court: (1) the Rule 12(b)(6) dismissal of the appellants' claim that Carl Marlinga discharged the Balkwills and Russ "in substantial part" because they were "active in union activities," (2) the grant of summary judgment against appellants on their claim that Marlinga discharged them "in substantial part" because of their political affiliations, (3) the determination that Marlinga is entitled to qualified immunity respecting the political affiliation claims, and (4) the dismissal of the Balkwills' slander claim as untimely. 732 F.Supp. 749. For the reasons that follow, we AFFIRM the district court.
 
 
 2
 The Balkwills and Russ served as assistant prosecutors under Macomb County's former prosecutor, George Parris. Marlinga defeated Parris in a hotly contested Democratic primary race in 1984. After winning the general election, Marlinga was sworn in as the new Macomb County prosecutor. Under Michigan law, the employment as assistant prosecutors automatically terminated upon Marlinga's assuming office. Mich.Comp.Laws Ann. Sec. 49.33. Marlinga did not reappoint the Balkwills and Russ, and the district court correctly determined this to be a "constructive discharge." Christian v. Belcher, 888 F.2d 410, 416 (6th Cir.1989) (citing Branti v. Finkel, 445 U.S. 507, 512 n. 6, 100 S.Ct. 1287, 1291 n. 6, 63 L.Ed.2d 574 (1980)).
 
 
 3
 The Balkwills and Russ filed a complaint alleging age discrimination on September 30, 1986, in Wayne County Circuit Court. The action was transferred to Macomb County Circuit Court on January 1, 1987. Frederick Balkwill subsequently was elected Macomb County Circuit Court Judge, however, and thus the entire Macomb County Circuit Court recused itself. The action was transferred back to Wayne County and the complaint was amended adding a claim of tortious interference with the Balkwills' and Russ' employment contract, slander against the Balkwills, and two claims by the Balkwills and Russ under section 1983. The two claims under section 1983 include their union activities claim and their political affiliation claim.
 
 
 4
 The cause was removed to federal district court on May 26, 1989, and appellees moved respectively for dismissal and summary judgment under Rules 12(b)(6) and 56, Fed.R.Civ.P., on August 11, 1989. The district judge issued an order dismissing the section 1983 union activities claim pursuant to Rule 12(b)(6). The district judge granted summary judgment for the appellees on the section 1983 political affiliation claim and the state law slander claim. The district judge remanded the remaining claims to state court, and the appellants filed a timely appeal to this court.
 
 
 5
 The appellants appeal the district judge's ruling that the union activities claim must be dismissed under Rule 12(b)(6). They assert that their first amendment free speech and associational rights are separate and distinct and, therefore, the district court erred in applying the Supreme Court's free speech analysis in Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), to their first amendment free association claim. The Connick Court held that in the discipline of public employees, only speech that involves a matter of "public concern" is protected by the first amendment. Id. at 146, 103 S.Ct. at 1689-90 (footnote omitted). This court held in Boals v. Gray, 775 F.2d 686, 692 (6th Cir.1985), that no logical reason exists for distinguishing between speech and association in applying Connick to first amendment claims, including union activities claims. Thus, appellants' attempt to distinguish their freedom of association claim is without merit.
 
 
 6
 In dismissing the appellants' allegations of discharge for union activities claim, however, the district judge based his holding on the proposition that appellants failed to aver in their complaint that their union activities touched on a matter of public concern. Because the appellants failed to allege that the union activities touched on a matter of public concern, the district judge reasoned that under Connick, supra, they failed to state a claim for which relief can be granted. We disagree.
 
 
 7
 We find the appellants' union activities claim sufficient to state a claim under the minimal requirements of notice pleading, Rule 8(a), Fed.R.Civ.P. We note, however, that appellees provided the affidavit of Marlinga, clearly stating that he was not aware of any union activities on the part of the Balkwills and Russ. We note further that the appellants failed to submit any affidavits whatsoever. Consequently, on this record the termination of the Balkwills and Russ could not have been the result of union activities. Thus, while dismissal under Rule 12(b)(6) was inappropriate, we hold that summary judgment was appropriate for appellees under Rule 56 on the union affiliation claim. Cleland v. Bronson Health Care Group, Inc., 917 F.2d 266, 268 (6th Cir.1990).
 
 
 8
 The appellants also appeal the district court's grant of summary judgment on their political affiliation claim. They argue that political affiliation is not pertinent to the effective performance of a Michigan assistant county prosecutor. The appellants contend that the job of assistant prosecutor is a limited, technical and neutral position.
 
 
 9
 The Supreme Court has established that politically motivated discharge of government employees violates the first amendment unless the job is a policy-making position. Rutan v. Republican Party of Illinois, --- U.S. ----, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); Branti v. Finkel, 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980); Elrod v. Burns, 427 U.S. 347, 366, 96 S.Ct. 2673, 2686, 49 L.Ed.2d 547 (1976). In addressing whether a job is a policy-making position, this court held that the "relevant focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office." Williams v. River Rouge, 909 F.2d 151, 154 (6th Cir.1990) (citing Meeks v. Grimes, 779 F.2d 417, 419 n. 1 (7th Cir.1985)). Thus, we believe it appropriate to consider only the required duties of a Michigan county assistant prosecutor, not the job as it was performed by the Balkwills and Russ.
 
 
 10
 The district judge correctly recognized that under a Michigan statute, an assistant prosecutor must "perform any and all duties pertaining to the office of prosecuting attorney...." Mich.Comp.Laws Ann. Sec. 49.42. Moreover, in holding that the job of public defender is not a policy-making position, the Supreme Court noted that a public defender's responsibilities stand "in contrast to the broader public responsibilities of an official such as a prosecutor." 445 U.S. at 519, n. 13, 100 S.Ct. at 1295, n. 13. We recognize also that other circuits have held political affiliation an appropriate consideration in the discharge of an assistant prosecutor. Clark v. Brown, 861 F.2d 66, 68 (4th Cir.1988); Livas v. Petka, 711 F.2d 798, 800-01 (7th Cir.1983); Mummau v. Ranck, 687 F.2d 9, 10 (3d Cir.1982). Because Michigan law statutorily imposes the inherent policy-making responsibilities of the prosecutor on the assistant prosecutor, we hold that the job of assistant prosecutor is a policy-making position. Accordingly, we uphold the district judge's grant of summary judgment on the political affiliation claim. Because we so hold, examination of the qualified immunity issue is unnecessary.
 
 
 11
 The Balkwills also challenge the district court's dismissal of their state law slander claim. In Carnegie-Mellon v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the Supreme Court ruled that a federal court need not dismiss state claims when all federal claims have been eliminated. Although the federal court may decline to exercise jurisdiction, the rule is not mandatory but, instead, may be applied flexibly in all cases. Id. at 350, 108 S.Ct. at 618-19. The federal court must balance concerns of judicial economy, convenience, fairness and comity. Id.
 
 
 12
 The state issue before the federal district court involved a simple application of a basic state rule, specifically the statute of limitations on slander claims. Allowing remand of this claim to state court would have only delayed the inevitable. Michigan's statute of limitations for slander is one year. Mich.Comp.Laws Ann. Sec. 600.5805(7). The Balkwills raised the slander claim in the second amended complaint, more than one year following the alleged conduct. The claim did not arise out of the same conduct on which the Balkwills based their original complaint. Accordingly, the district court properly dismissed the slander claim as untimely. Fed.R.Civ.P. 15(c).
 
 
 13
 The judgment of the district court is therefore AFFIRMED.
 
 
 14
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 15
 Although I concur in the court's disposition of the appeal and in the opinion, I write separately to offer some additional comments on the significance of the plaintiff-appellants' failure to submit any affidavits in response to the defendant-appellees' motion for dismissal and summary judgment.
 
 
 16
 In their response to the motion, the defendant-appellees stated that although a magistrate had entered an order allowing discovery to continue until March 1, 1990, "Defendants are unwilling to participate in discovery until Defendants' current Motion is decided." If, pursuant to Rule 56(f), Fed.R.Civ.P., the plaintiff-appellants had submitted an affidavit establishing, "for reasons stated," that they "cannot ... present by affidavit facts essential to justify the ... opposition," I believe it would have been reversible error for the trial court to have entered judgment for the defendants on the union-affiliation claim without ordering a continuance to permit the plaintiffs to take the deposition of defendant Marlinga. As I read the record, however, it contains no adequate explanation of the plaintiffs' failure to depose Mr. Marlinga.
 
 
 17
 The fact that Mr. Marlinga may have been "unwilling" to participate in discovery means nothing. Under Rule 30, Fed.R.Civ.P., the plaintiff-appellants were entitled to take Mr. Marlinga's deposition upon oral examination whether or not he wished to be deposed. The plaintiffs would not even have had to serve Mr. Marlinga with a subpoena; because he was a party, they merely had to give reasonable written notice, pursuant to Rule 30(b), Fed.R.Civ.P., of the time and place for the taking of the deposition. Had Mr. Marlinga failed to appear at the stated time and place, the plaintiff-appellants would have been entitled to have his pleadings stricken. See C. Wright and A. Miller, Federal Practice and Procedure; Civil Sec. 2107, n. 16.
 
 
 18
 The record does not indicate that the plaintiff-appellants ever gave notice of Mr. Marlinga's deposition, and they clearly failed to make the kind of showing required by Rule 56(f). See Emmons v. McLaughlin, 874 F.2d 351, 356-57 (6th Cir.1989) ("Appellant bore the burden," under Rule 56(f), "to demonstrate to the district court 'for reasons stated' why he could not oppose the summary judgment motion by affidavit and how postponement of a ruling on the motion would enable him to rebut Appellee's showing of the absence of a genuine issue of fact.") Absent compliance with Rule 56(f), this court, in my view, has no alternative but to take the action described in the court's opinion.